# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

RAYMOND CLARK,

     Plaintiff,

VS.

                           No. 05-1224-T/An

CORRECTIONS CORPORATION OF
AMERICA, ET AL.,

     Defendants.

---

### ORDER ASSESSING FILING FEE
### ORDER OF DISMISSAL
### ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION
### ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
### AND
### NOTICE OF APPELLATE FILING FEE

---

Plaintiff Raymond Clark a/k/a Raymond E. Clark, Tennessee Department of Correction ("TDOC") prisoner number 227052, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed what he characterized as an amended complaint on January 3, 2005 in case no. 04-1280-T/An. The substance of that amended complaint, which purports to assert claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, was completely unrelated to his original action. On January 13, 2005, plaintiff filed a motion for a preliminary injunction, accompanied by a legal memorandum. The motion for preliminary

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on 9/29/05

injunction pertains to the second complaint filed by the plaintiff. Plaintiff filed another motion for a preliminary injunction, accompanied by a legal memorandum, on March 2, 2005, also pertaining to the second complaint. On May 10, 2005, plaintiff filed a document concerning his efforts to exhaust his administrative remedies. It is not clear whether the May 10, 2005 filing concerns his first complaint or his second complaint.

The Court issued an order on August 1, 2005 that, *inter alia*, severed the two complaints filed by the plaintiff, directed that the complaint filed on January 3, 2005 and the associated motions be docketed under a new case number, and directed the plaintiff to file the documentation required by the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), or pay the civil filing fee with respect to the second complaint. The plaintiff submitted the documents required by the PLRA on August 25, 2005.

The Clerk shall record the defendants as the Corrections Corporation of America ("CCA"); Correctional Medical Services, Inc. ("CMS"); HCCF Warden Glen Turner; Doctor Cole; and HCCF Health Administrator James Boyette.

I.     Assessment of Filing Fee

Under the PLRA, 28 U.S.C. § 1915(a)-(b), all prisoners bringing a civil action must pay the full filing fee of $150.00 required by 28 U.S.C. § 1914(a).[1] The statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

---

[1] This complaint was submitted prior to March 7, 2005. Therefore, the increased civil filing fee of $250.00 does not apply.

In this case, the plaintiff has properly completed and submitted an *in forma pauperis* affidavit containing a certification by the trust fund officer and a trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account, and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment. All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 262 U.S. Courthouse, 111 S. Highland Ave., Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order. If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the HCCF to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees. However, the Clerk shall not issue process or serve any other papers in this case.

4

II.    Analysis of Plaintiff's Claims

In his complaint, the plaintiff alleges that the defendants have been deliberately indifferent to his serious medical needs.  The specifics of the plaintiff's claim are difficult to decipher, as the complaint states that plaintiff first arrived at the HCCF "[o]n or about 3-28-03 or 3-29-04" but then goes on to relate matters that apparently occurred at the HCCF "[o]n or about 3-27-02."

The plaintiff allegedly suffers from hepatitis A, B, and C, kidney problems, high blood pressure, and cirrhosis of the liver.  Prior to his arrival at the HCCF, the plaintiff had apparently been incarcerated in Kentucky and had been approved for treatment with interferon and ribovirin.  The plaintiff also has other medical problems, and he is prescribed several medications.

The gist of the complaint is that defendant Cole refused to approve interferon treatment for the plaintiff's hepatitis C.  On October 26, 2003, defendant Cole allegedly told the plaintiff that "the Hepititis [sic] C Treatment Cost A lot of Money and that I could take the medication until I was about to die and then they would send me to the T.D.O.C. Special Needs and they could pay for the treatment." (Compl., ¶ 27.) [2]  The complaint alleges that the plaintiff suffered severe physical problems throughout 2003, and defendant Cole provided no treatment for his condition.  Plaintiff also expresses the opinion that his

---

[2]  Plaintiff presumably means that he could <u>not</u> receive the treatment until he was on the verge of death.

untreated hepatitis C reduced the effectiveness of the medication he was prescribed for his other medical conditions.

On or about March 23, 2004, one year after plaintiff's arrival at the HCCF, defendant Cole allegedly told the plaintiff that interferon-ribavirin treatment would be approved once his medical records arrived from Kentucky. Plaintiff contends that defendant Boyette intentionally provided the State of Kentucky with incorrect identifying information for the plaintiff in April of 2004 in order to delay receipt of his medical records. By the time this complaint was filed nine months later, plaintiff's medical records had apparently not arrived from Kentucky, and defendant Cole has refused to approve a liver biopsy done to assess the damage to plaintiff and to approve interferon treatment. He contends that, as a result of defendant Cole's deliberate indifference, he is showing symptoms of liver disease. The complaint also alleges that defendant Cole has attempted to deceive the plaintiff about the seriousness of his medical condition by withholding the results of his medical tests.

The complaint further alleges that defendants are discriminating against inmates with hepatitis C in violation of the ADA, because that condition is not treated aggressively whereas the defendants provide aggressive treatment to inmates who suffer from HIV or cancer. The plaintiff seeks injunctive relief and compensatory and punitive damages.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v.

6

_Toombs_, 139 F.3d 1102 (6th Cir. 1998); _see_ _Porter v. Nussle_, 534 U.S. 516, 532 (2002)

("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive

force or some other wrong."); _Booth v. Churner_, 532 U.S. 731 (2001) (prisoner seeking only

money damages must exhaust administrative remedies although damages are unavailable

through grievance system). This requirement places an affirmative burden on prisoners of

pleading particular facts demonstrating the complete exhaustion of claims. _Knuckles El v._

_Toombs_, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C.

§ 1997e(a):

> a prisoner must plead his claims with specificity and show that they have been
> exhausted by attaching a copy of the applicable administrative dispositions to
> the complaint or, in the absence of written documentation, describe with
> specificity the administrative proceeding and its outcome.

_Knuckles El_, 215 F.3d at 642; _see also_ _Boyd v. Corr. Corp. of Am._, 380 F.3d 989, 985-96

(6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials

fail to respond in a timely manner to a grievance), _cert. denied_, 125 S. Ct. 1639 (2005);

_Baxter v. Rose_, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion

adequately may not amend his complaint to avoid a _sua sponte_ dismissal); _Curry v. Scott_,

249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for

failure to exhaust when plaintiffs did not submit documents showing complete exhaustion

of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the

prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot

exhaust those remedies during the pendency of the action.  Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).  Finally, the Sixth Circuit recently held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims.  Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005).

In this case, the complaint alleges that plaintiff filed a grievance on October 29, 2004 against each of the defendants for denying medical treatment for his hepatitis C and cirrhosis of the liver.  The plaintiff asserts that the grievance also complained about the fact that defendant Boyette provided the wrong identifying information to the State of Kentucky so that plaintiff's medical records would not be received.  A copy of the grievance, which is attached to the complaint, states:

> On 10-28-04 I was given a pass to see Dr. Cole.  I was told he was here, and wasn't going to see me until he gets my file from Jackson Hospital. I have been trying to get Dr. Cole, Correctional Medical Service, Warden Turner, Warden Adams, Warden Patterson, and Boyette and Ms. Sexton to treat me for my hepatitis-A-B-C since I've been here for over 18 months. My condition has worsen.  I've been sick, IE. its hard to eat, I've lost weight I've already been approved in the Kentucky prison for the year long treatment, and the Doctor at the Hospital in Jackson asked me why I wasn't on the treatment of Interferon, Ribavirin pills, since my liver has cirrhosis, and that I will need a liver transplant, and a liver biopsy would asses [sic] the extent of the damages to my liver.  I have symptoms of advance infection and need the treatment today.  I am being discriminated under The Americans with Disabilities Act and 504 of the Rehabilitation Act and Title VI of the Civil Rights Act and Denied Medical Treatment for Hepatitis ABC.

Contrary to the allegations in the complaint, this grievance does not name defendant CCA and it does not complain about defendant Boyette's failure to obtain the plaintiff's medical records from Kentucky.

The grievance chairperson allegedly sent the plaintiff a memorandum, dated November 2, 2004, stating that his grievance was being "sent back to inmate for medical diagnosis." The plaintiff alleges his grievance was never returned to him but was, instead, destroyed by the grievance chairperson. The complaint alleges that it is the practice of the grievance chairperson to destroy grievances concerning medical matters. This allegation is arguably sufficient to satisfy the plaintiff's burden of describing with specificity the reasons why he is unable to comply with the TDOC grievance policy. See Boyd, 380 F.3d at 996, 997.[3] Accordingly, the plaintiff has adequately alleged that he satisfied the requirements of 42 U.S.C. § 1997e(a) with respect to his Eighth Amendment claim that every defendant except CCA was deliberately indifferent to his serious medical needs.

The plaintiff allegedly submitted another grievance on November 1, 2004 concerning the same subject matter. That grievance names each of the defendants, mentions the alleged promise to obtain his medical records from the Kentucky prison and the fact that the wrong Social Security number was supplied to Kentucky authorities, mentions the alleged policy of CCA and CMS to avoid prescribing interferon treatment because of the cost, and states

---

[3] Pursuant to the TDOC grievance procedure, diagnoses by medical professionals are not grievable. TDOC, Admin. Pol. & Proc., Index No. 501.01, ¶ VI.F.8 (May 1, 2004). However, "[i]f the chairperson determines a matter to be non-grievable, the grievant may appeal that decision." Id., ¶ VI.F. The complaint sufficiently alleges that plaintiff was unable to appeal the chairperson's actions because the grievance was not processed.

that defendant Cole has refused to let plaintiff see the results of his lab tests. The grievance chairperson sent the plaintiff a memorandum, dated November 11, 2004, stating that the grievance was filed as a non-emergency grievance and that it was "placed in pending." Plaintiff claims he received that memorandum on November 15, 2004 and, on November 16, 2004, he sent the grievance chairperson an inmate request form asking for the status of his grievance. The response to that request, which is dated November 23, 2004, states:

> As told to you before this grievance was deemed non-emer. & placed in pending. It will be processed when it comes time to pull from pending.

Pursuant to TDOC policy, "[t]here will be a seven (7) working day time limit at Level I, starting the day the grievance begins to be processed." TDOC Policy No. 501.01, ¶ VI.C.1.[4] If the grievant is dissatisfied with the response of the chairperson at Level I, he is entitled to appeal to the grievance committee and the warden. Id., ¶ VI.C.2. The policy further provides that, "[i]f a time period expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response." Id., ¶ VI.D.[5]

---

[4]  TDOC policy provides that "[g]rievances deemed to be emergencies shall be expedited. The grievance chairperson or designee shall immediately bring emergency grievances to the attention of the appropriate person by whom corrective action may be taken." Id., ¶ VI.I.1.

[5]  Likewise, "[t]he determination that a grievance is not an emergency may be appealed through normal grievance procedures." Id., ¶ VI.I.2.

Because the grievance chairperson did not process the grievance within seven working days, the plaintiff was entitled to proceed directly to the grievance committee at Level II. The plaintiff did not do that, nor did he appeal the chairperson's determination that his grievance was not an emergency.  Instead, he filed a series of Level I grievances demanding that the chairperson process the grievance that was previously submitted, as the prescribed time period has elapsed.  Plaintiff submitted a series of memoranda he received about these new grievances, indicating they were deemed non-emergency in nature and placed in pending.  Accordingly, the plaintiff has not exhausted the additional claims stated in the November 1, 2004 grievance, including his Eighth Amendment claim against CCA, his claim concerning the failure to obtain his medical records from the State of Kentucky, and his claim that defendant Cole withheld his test results.[6]

---

[6]  In reaching this conclusion, the Court has not examined in detail the six inches of documents that were attached to the motions for preliminary injunctive relief.  (Much of the material that was submitted with those motions is duplicative of material already submitted or is irrelevant, as the documents pertain to grievances submitted by other inmates or grievances filed by the plaintiff that have no bearing on the claims alleged in this complaint.)  Pursuant to Baxter v. Rose, 305 F.3d at 488-90, a prisoner may not amend his complaint to avoid a *sua sponte* dismissal for failing adequately to demonstrate exhaustion.  Moreover, as previously mentioned, see *supra* p. 7, an inmate must completely exhaust all his claims prior to the filing of a complaint.  Moreover, as both preliminary injunction motions concern, in large part, the allegedly inadequate grievance procedures at the HCCF, it can be inferred that plaintiff had not succeeded in exhausting his administrative remedies.  The May 10, 2005 filing does not demonstrate that the plaintiff exhausted any of the claims alleged in this complaint.

Although the complaint also asserts that the plaintiff wrote or spoke to various prison officials, including defendant Turner, the Sixth Circuit has repeatedly held that an inmate must strictly follow the prison grievance procedures.  Shephard v. Wilkinson, 27 Fed. Appx. 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); Hewell v. Leroux, 20 Fed. Appx. 375, 377 (6th Cir. Sept. 21, 2001) (same); see also Clark v. Beebe, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney's office that eventually made its way to the warden of plaintiff's prison).  Plaintiff's letters, information requests, and informal conversations are not, therefore, a substitute for a formal inmate grievance.

The next matter to be considered is whether plaintiff has exhausted his ADA claim.

> For a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process. In describing the alleged mistreatment or misconduct, however, we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003). In Burton, the Sixth Circuit concluded that the plaintiff had adequately exhausted a retaliation claim by examining the text of his grievances to determine whether the factual statements were sufficient to put prison officials on notice of that issue. Id. at 575-77.

Plaintiff's presentation of his ADA claim presents the mirror image of the factual situation in Burton. The text of the October 29, 2004 grievance cites the ADA, but no factual allegations in that grievance alert prison officials to the basis for his ADA or discrimination claim. In particular, the grievance does not allege that the treatment afforded to hepatitis C patients is less aggressive than that provided to inmates who are suffering from other medical conditions. Moreover, the nature of the plaintiff's ADA or discrimination claim is not so obvious that the mere citation to the relevant statutes is sufficient to alert prison officials to the issue.

The Sixth Circuit recently stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which

relief may be granted, and his complaint must be dismissed *sua sponte*." Baxter, 305 F.3d at 489. Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the Court DISMISSES the complaint in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[7] The motions for preliminary injunctive relief are DENIED as moot.

III.   Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

---

[7] As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d at 489.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[8]  In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA.  Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

IT IS SO ORDERED this 26th day of September, 2005.

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[8]  Effective November 1, 2003, the fee for docketing an appeal is $250.00.  See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913.  Under 28 U.S.C. § 1917, a district court also charges a $5.00 fee.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 11 in case 1:05-CV-01224 was distributed by fax, mail, or direct printing on September 29, 2005 to the parties listed.

---

Raymond Clark
HCCF-CCA
227052
P. O. Box 549
Whiteville, TN 38075

Honorable James Todd
US DISTRICT COURT